34 C.C.P.A. (Patents)

## LICHTENWALTER v. CARON.
### Patent Appeal No. 5228.

Court of Customs and Patent Appeals.
Jan. 7, 1947.

Hammond & Littell, of New York City (Charles P. Pollard, of New York City, and Francis G. Cole, of Washington, D. C., of counsel), for appellant.

Samuel Z. Gordon, of Washington, D. C., for appellee.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

HATFIELD, Associate Judge.

This is an appeal in an interference proceeding from the decision of the Board of Interference Examiners of the United States Patent Office awarding priority of invention of the subject matter defined in the counts in issue, Nos. 1 and 2, to appellee Martinus H. Caron.

The interference is between appellee's patent No. 2,290,313, issued July 21, 1942, on an application filed May 28, 1941, and appellant's application No. 458,136, filed September 12, 1942.

Appellant is the junior party and as his application was filed subsequent to the issuance of appellee's patent, the burden was upon him to establish priority of invention beyond a reasonable doubt.

The invention relates to a process of separating nickel and cobalt from certain solutions, both the solutions and the process being sufficiently defined in the counts in issue, which read:

1. In the separation of nickel and cobalt from solutions containing, in addition to these metals and to unavoidable impurities, ammonia and carbon dioxide only, the process which comprises heating and concentrating such a solution, thereby causing the initial precipitation of basic nickel carbonate, stopping the heating and concentration substantially as soon as cobalt begins to precipitate in insoluble form, then separating the resulting basic nickel carbonate precipitate in substantially pure form.

2. The process of count 1 wherein the said heating and concentration is conducted under vacuum conditions.

The counts in the interference are claims 1 and 2 of appellee's patent and were copied by appellant for interference purposes. The counts differ from the claims of appellee's patent in that each contain the term "carbon dioxide" instead of the term "carbon monoxide." The board stated that the use of the term "carbon monoxide" in the claims of the patent was an obvious mistake and that the claims should have contained the term "carbon dioxide." No claim is made here by counsel for appellant that the board was in error in that regard and the case has been tried upon the theory that the claims in the patent contained the words "carbon dioxide" instead of "carbon monoxide."

Appellee submitted no testimony but relies upon the filing date (May 28, 1941) of his application, which matured into his patent, (July 21, 1942) for conception and constructive reduction to practice.

Appellant submitted testimony in the form of affidavits for the purpose of establishing that he conceived the invention and reduced it to practice during the months of March, April, and May 1941.

The record contains the affidavit of appellant, a research chemist in the employ of the Freeport Sulphur Company which had offices in the City of New York, at Grande Ecaille Sulphur Mine near Port Sulphur, Louisiana, and at Hoskins Mound Sulphur Mine near Freeport, Texas; that of Donald B. Mason, employed as "Technical Director" in the New York office of the Freeport Sulphur Company; of Robert C. Hills, who was employed as a chemist by the Freeport Sulphur Company at Grande Ecaille Sulphur Mine near Port Sulphur, Louisiana, and Hoskins Mound Sulphur Mine near Freeport, Texas; and the affidavit of Rapheal Matson, who was also employed as an analytical chemist by the Freeport Sulphur Company at the Grande Ecaille Sulphur Mine near Port Sulphur, Louisiana, and at Hoskins Mound Sulphur Mine near Freeport, Texas.

It is conceded by counsel for appellee that appellant's Exhibit 8, dated March 18, 1941, which is a report made to the witness Robert C. Hills, discloses the invention defined by count 1, and his Exhibit 4, dated May 17, 1941, which is a report addressed

to Mr. C. O. Lee, assistant to the General Manager of the Freeport Sulphur Company, and the witness Robert C. Hills, discloses the invention defined by count 2. Accordingly, appellant is entitled to those dates, which are prior to appellee's filing date—May 28, 1941, for conception of the invention defined by the counts in issue.

The sole issue in the case is whether the evidence submitted by appellant is sufficient to establish that he reduced the invention to practice prior to appellee's filing date, May 28, 1941.

In its decision, the board stated that even if it be assumed that appellant's affidavit and the reports of his experiments were sufficient to indicate that he was in possession of the invention prior to appellee's filing date, his evidence was not corroborated, as required by law, and that, therefore, appellant failed to establish that he had reduced the invention to practice prior to his filing date—September 12, 1942. In support of its decision, the board cited the decisions of this court in the cases of Collins v. Olsen, 102 F.2d 828, 26 C.C.P.A., Patents, 1017; Kear v. Roder, 115 F.2d 810, 28 C.C.P.A., Patents, 774; and Crane et al. v. Carlson, 125 F.2d 709, 29 C.C.P.A., Patents, 879.

The board pointed out in its decision that the witness Donald B. Mason was employed in the New York office of the Freeport Sulphur Company, whereas all of the experiments of appellant were at Grande Ecaille Sulphur Mines near Port Sulphur, Louisiana, and that the statements contained in the Mason affidavit were obtained from reports from the witness Robert C. Hills. The board quoted in its decision from the affidavit of the witness Mason, in which it was stated that: "On several occasions during this period, I visited the laboratory at said mine and know that such work was being done."

 It was correctly pointed out in the board's decision that the witness Mason did not state in his affidavit that he actually saw any of the experiments performed by appellant; that he relied solely upon reports made by appellant to the witness Hills, which the affiant received in the usual course of procedure of the Freeport

Sulphur Company; and that his testimony, therefore, did not tend to corroborate the testimony of appellant that the invention defined by the counts in issue had been successfully reduced to practice prior to his filing date.

The board next considered the affidavit of the witness Robert C. Hills, who was in charge of "new development work in the research laboratories" of his company at the Grande Ecaille Sulphur Mine near Port Sulphur, Louisiana, and the Hoskins Mound Sulphur Mine near Freeport, Texas, "as to all experimentation and testing in a program to develop a commercial process for the recovery of nickel from nickeliferous ores." (It may be stated at this point that it appears from the record that a considerable portion, how much is not stated, of the work involved in carrying out appellant's experiments was performed by chemists other than appellant, employed by the Freeport Sulphur Company, and that those chemists were not called as witnesses.) The board quoted a portion of the following statement contained in the affidavit of Robert C. Hills: I exercised close supervision of the work conducted by him and his associates and kept myself well informed by personal observation as to the work conducted in the laboratories as the same was being carried out. Through close contact with the work done in the laboratories and frequent conferences and discussions with Myrl Lichtenwalter during February, March, April and May of 1941, as well as later, I know that during this period he originated and carried out a fractional and selective precipitation process for separation of nickel and cobalt from ammonium carbonate leach solutions containing cobalt and nickel and various unavoidable impurities, by a series of steps involving distilling of ammonia, sometimes under partial vacuum and sometimes not, until a substantial proportion of the nickel had precipitated as basic nickel carbonate, stopping the heating just before any substantial proportion of cobalt had precipitated, separating the nickel precipitate from the solution and impurities therein, again distilling to precipitate the cobalt and the remaining nickel, and separating the precipitate obtained."

The board further quoted the following from the affidavit of witness Hills: "From these reports [appellant's written reports] and from conferences with Myrl Lichten-walter [appellant] and *his associates* as well as from personal observations of work in the laboratory, I prepared the following periodical reports, * * *." (Italics ours.)

The board concluded from the witness Hills' affidavit that some, at least, of the information acquired by him was obtained from appellant and that as the witness failed to specify any particular experiments or portions thereof which he personally observed, it was impossible to determine from his affidavit what part of his alleged information was obtained from personal observation of appellant's experiments, and that, therefore, the testimony of the witness was not sufficient to corroborate the testimony of appellant. The board further quoted from the Hills affidavit to the effect that the experiments on behalf of appellant were carried out day and night for a period of several days; that notations on the work sheets were made by several different chemists; and that only a portion of the experiments was carried out by appellant.

The board further correctly stated in its decision that the witness Rapheal Matson stated in his affidavit that he had analyzed certain samples submitted to him by appellant and appellant's associates during the period from March 3, 1941, to May 27, 1941. The witness stated that he had analyzed samples submitted to him and that they contained certain percentages of nickel and cobalt, however, there is nothing in his affidavit to indicate that he had any knowledge whatsoever of the process by which the samples which he analyzed was obtained. Accordingly, his testimony does not corroborate the testimony of appellant that the process defined by the counts in issue was reduced to practice. It may be that the samples analyzed by him might have been produced by a process other than that defined by the counts in issue.

It is evident from the decision of the board that it carefully considered all of the testimony submitted by appellant. The board concluded that, in view of the authorities hereinbefore cited, appellant failed to establish by corroborating testimony that he had reduced the invention to practice prior to appellee's filing date—May 28, 1941.

In the case of Kear v. Roder, supra [28 C.C.P.A. 774, 115 F.2d 814], we stated: "The only witness whose testimony tends to corroborate appellant's testimony as to reduction to practice of the invention is Diamond; *but the difficulty with that testimony is that it is not clear whether his corroborating testimony is based wholly upon his personal knowledge or in part upon conversations with appellant and upon reports, entries in appellant's note-book, and the time cards of appellant."* (Italics ours.)

In the case of Collins v. Olsen, supra [26 C.C.P.A. 1017, 102 F.2d 831], we said: "We must conclude that statements in reports by Olsen, no matter how clear, as to what he used, what he did and what the results were, cannot be accepted as proof of reduction to practice, unless fully corroborated, *even though such reports were made to an official who had such confidence in their accuracy that he was willing to act upon them without complete and independent investigation.* While they constitute good evidence of conception, they are self-serving on the question of reduction to practice. See Petrie v. De Schweinitz, 19 App.D.C. 386; Sundberg et al. v. Schmitt, 58 App.D.C. 292, 29 F.2d 880; Fausek et al. v. Vincent, 92 F.2d 909, 25 C.C.P.A., Patents, 770; Janette v. Folds et al., 38 F.2d 361, 17 C.C.P.A., Patents, 879; Rolfe v. Hoffman, 1905 C.D. 356; Daggett v. Kaufmann, 33 App.D.C. 450; and Robinson v. Thresher, 28 App.D.C. 22. (Italics ours.)

In addition to the cases hereinbefore cited, see Patterson et al. v. Clements et al., 136 F.2d 1002, 30 C.C.P.A., Patents, 1262.

■ It should be understood, of course, that for the purpose of proper corroboration, a corroborating witness need not observe every act of an appellant in a case of the character of that here involved. However, it is necessary in view of the decisions hereinbefore cited, that he observe the essential steps of the process involved,

otherwise he can only testify from what he considers as authentic hearsay reports of what took place.

We have given most careful consideration to the evidence of record and to the arguments presented by counsel for appellant, but are of opinion, as was the Board of Interference Examiners, that the alleged corroboration of appellant's evidence is not sufficient to warrant a holding that appellant reduced the invention to practice prior to appellee's filing date—May 28, 1941.

The question of diligence is not raised by appellant and, therefore, need not be considered.

Owing to the views we hold, it is unnecessary that we consider the supplemental briefs filed by counsel for the parties.

For the reasons stated, the decision of the Board of Interference Examiners is affirmed.

Affirmed.